Filed 10/15/20  P. v. Probert CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MISTY LYNN PROBERT,<br><br>    Defendant and Appellant. | D075716<br><br><br>(Super. Ct. No. SCS304526) |


APPEAL from a judgment of the Superior Court of San Diego County, Roderick W. Shelton, Judge.  Affirmed.

Elisabeth A. Bowman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Randall D. Einhorn and Elizabeth M. Kuchar, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

# INTRODUCTION

Defendant Misty Lynn Probert appeals from a judgment entered after a jury convicted her of three counts of robbery. The charges against Probert stemmed from an incident in which she shoplifted various items from a Kohl's store. After Probert exited the store and was approached by three loss prevention officers, her boyfriend and codefendant, Alfred Vinck, got out of his vehicle and brandished a knife in the direction of the loss prevention officers as Probert walked past them, still in possession of the stolen merchandise, and got into Vinck's car. Vinck and Probert then left the scene together.

The prosecution's theory of the case was that what had been a petty theft became a robbery of the three loss prevention officers once Vinck brandished the knife. On appeal, Probert contends that there is insufficient evidence to support a finding that she had the intent to aid and abet a robbery. Probert also contends that the standard instructions for aiding and abetting intended crimes (CALCRIM No. 401) and robbery (CALCRIM No. 1600) failed to adequately inform the jury that in order to convict her of robbery, it had to find that she intended to aid and abet Vinck's commission of the robbery. Probert argues that although her trial counsel failed to object to these standard instructions or to request a pinpoint instruction or clarification of the instructions, the contention has not been forfeited because the error "affected [her] substantial rights." Alternatively, Probert contends that her attorney's failure to object or request a clarifying instruction constituted ineffective assistance of counsel, and requires reversal of the judgment.

2

We reject Probert's contentions. There is substantial evidence to support the jury's finding that Probert intended to aid and abet in the robbery. Further, by failing to request a clarifying instruction, Probert forfeited her contention that the instructions failed to adequately inform the jury that it had to find that she intended to aid and abet Vinck in the robbery, and her attorney's failure to request a clarifying instruction did not constitute ineffective assistance because the instructions were sufficient to apprise the jury that it could find Probert guilty of robbery only if it determined that she shared Vinck's intent to commit robbery. We therefore affirm the judgment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual background*

1. *The prosecution*

On the afternoon of September 21, 2018, Probert entered a Kohl's department store. Kohl's loss prevention officers Lisa H. and Jenny R. noticed Probert exhibiting behavior consistent with shoplifting. They began to monitor Probert as she walked about the store. They observed Probert walk to the juniors' department, quickly grab five pairs of jeans without looking at the prices, enter a fitting room and emerge a few minutes later holding only her purse and one pair of jeans. When Jenny R. checked the fitting room that Probert had used, she found that three, not four, pairs of jeans had been left there. After Probert left the fitting room area, she went to the girls' department, where she took a decorative bow, removed it from its cardboard packaging, and clipped it onto her jacket. While in the girls' department, Probert put a pair of children's green shorts inside her purse; at

3

some point, she picked up a pair of pink shorts, which she added to the items that she was holding in her hands.

Probert continued to walk around the store while cradling several items in her arms, including the pair of jeans that she had brought with her from the fitting room, the pink shorts that she picked up in the girls' department, and the packaging that she had removed from the bow that she had clipped onto her jacket. Probert eventually began heading toward the store's registers. During this time, she made a telephone call. After Probert made the call, her codefendant, Alfred Vinck, pulled out of his parking spot and drove up to the front entrance of the store. Probert stopped at a display case, where she discarded the bow's packaging, as well as other items. She then walked up to a register and paid for the pair of pink shorts; she did not pay for the bow that she had affixed to her jacket, nor did she pay for the pair of jeans and the pair of shorts that she had concealed in her purse.

As soon as Probert walked out of the store, three loss prevention officers approached her. The loss prevention officers were standing a few feet away from Probert, blocking her path. Loss prevention officer Hector H. introduced himself, showed Probert his employee badge, and informed her that he " 'work[s] for Kohl's loss prevention.' " He told Probert that he had to talk to her inside the loss prevention office in the store. Probert was "dismissi[ve]" of the loss prevention officers and tried to continue walking past them while they were talking to her. The loss prevention officers had arranged themselves in such a way as to create a human barrier to try to prevent Probert from passing them, and they requested that Probert give them the items that she had taken from the store. They did not threaten, raise their voices at, or make any physical contact with Probert.

At this point, Vinck, who had pulled up in his car in front of the store, jumped out of the car.  He was holding a pocketknife that had a three-inch blade.  Vinck walked toward the loss prevention officers.  He appeared "very aggressive" and yelled, " 'Back the fuck up.' "  Vinck was holding the knife with one hand; the knife blade was pointed in the general direction of the loss prevention officers.  The loss prevention officers, who had been standing between Probert and Vinck's car, immediately moved out of Probert's way in fear.  Probert made her way directly to Vinck's car and said nothing.  As Probert was walking to the car, the loss prevention officers asked her to "[a]t least give us our stuff back."  Probert continued to ignore the loss prevention officers, and got into the car while still in possession of the stolen items.

Vinck did not say anything to Probert as he held the knife and Probert walked past him.

After Probert got into the vehicle, Vinck remained outside for another 30 seconds, "puff[ing] his chest" and yelling at the loss prevention officers, still holding the knife in his hand but backing up slightly.  Hector said to Vinck, "[I]t's just merchandise.  She should just give it back.  [I]t's not that serious . . . it doesn't have to be like that.  If [Vinck and Probert] could just cooperate."  Hector asked Vinck, "Why make it a big deal?"  Vinck got back into his car and drove off with Probert and the stolen merchandise.

2.  *The defense case*

Vinck testified in his own defense.  According to Vinck, he had no idea that Probert had stolen anything from the store; rather, he believed that the loss prevention officers, who were dressed in plainclothes, were trying to mug Probert as she exited the store.

According to Vinck's account, on the day these events took place, he and Probert had stopped at Kohl's to buy a change of clothes for their

5

daughter, who had wet herself in her car seat. Probert went inside the store, and Vinck stayed in the car with their young daughter. After about 30 minutes, Vinck pulled out of his parking spot and drove toward the front entrance to the store. Vinck said that he had assumed that Probert would be coming out of the store at around that time, and waited for her in front of the store with the car running.

Vinck testified that a few minutes after he drove to the front of the store, Probert walked out and was immediately confronted by two teenagers, one male and one female, who were dressed in black. The pair blocked Probert's path. Vinck said that he saw the male reach for the Kohl's bag that Probert was holding. A third individual "came out of nowhere" and blocked Vinck's view of Probert. Vinck testified that he thought Probert was being mugged. He grabbed his pocketknife from the compartment in the passenger side door and got out of the car. Vinck approached the individuals who were standing between Probert and the vehicle and told them to " '[b]ack the fuck up' " while he held the knife "up in the air." The individuals backed away from Probert at that point. As soon as the individuals scattered, Probert walked to the car and got inside without saying anything to Vinck. Vinck remained outside of the car for another 30 seconds and yelled at the individuals because they "were still coming toward [him]." Vinck acknowledged that he did not call 911 during the incident.

Once Vinck returned to the car and he and Probert began driving away, he asked Probert who those people were and what they were talking about. According to Vinck, Probert told him that those individuals worked for Kohl's and thought that she had stolen something from the store. Probert denied having stolen anything. Vinck said that he stopped the car and had Probert empty her purse, pockets, and the Kohl's bag to prove to him that she had not

6

stolen anything. According to Vinck, Probert showed him the receipt for the pink shorts, and he did not see any stolen items.

Vinck testified that he did not learn that Probert had engaged in shoplifting until he was interviewed by a detective weeks after the incident. During that interview, Vinck told the detective that he had forced Probert to go into the store by holding a gun to her head and threatening to cut her throat if she did not go inside. At trial, Vinck claimed that he had not actually threatened Probert, despite what he had told the detective, and indicated that he had been willing to lie to the detective in order to protect Probert.

Probert did not testify at trial. In closing argument, Probert's defense attorney argued that Probert could not be convicted of robbery because she, personally, never used force or fear to steal the merchandise, and Vinck's brandishing of the knife could not be used to satisfy that element of the offense as to Probert. Probert's attorney further argued that there was no evidence that Probert and Vinck planned to commit a robbery or that she entered the Kohl's with the intent to commit a robbery, such that the evidence could support a conviction under an aiding and abetting theory.

B. *Procedural background*

The San Diego District Attorney charged Probert and Vinck with three counts of robbery (Pen. Code,[1] § 211; counts 1–3). After a joint trial, a jury found both defendants guilty on all of the charges.

At sentencing, the trial court suspended imposition of Probert's sentence and placed her on three years of formal probation, with 365 days in local custody.

_____

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Probert filed a timely notice of appeal

## III.

## DISCUSSION

A. *There was substantial evidence to support the jury's conclusion that Probert intended to aid and abet a robbery*

Probert contends that there was insufficient evidence that she knew of Vinck's intent to brandish a knife and that she intended to assist in his commission of the robbery.

### 1. *Relevant legal standards*

In assessing a claim of insufficiency of the evidence, we review "the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Snow* (2003) 30 Cal.4th 43, 66.) Substantial evidence encompasses circumstantial evidence and reasonable inferences based on that evidence. (*People v. Pierce* (1979) 24 Cal.3d 199, 210.) "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." ' " (*People v. Bean* (1988) 46 Cal.3d 919, 932–933.) " ' "Circumstantial evidence may be sufficient to connect a defendant with the crime and to prove his guilt beyond a reasonable doubt." ' " (*People v. Thomas* (1992) 2 Cal.4th 489, 514.)

8

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  (§ 211; see *People v. Clark* (2011) 52 Cal.4th 856, 943.)  A robbery may be committed even where a defendant uses force or fear not in the original acquisition of the property, but in preventing the recovery of the property or facilitating an escape; such offenses are commonly referred to as an *Estes* robbery, after the 1983 case in which a court agreed that force or fear need not be undertaken contemporaneously with the taking of the property.  (See *People v. Estes* (1983) 147 Cal.App.3d 23, 28 (*Estes*) [a defendant's use of force to prevent a security guard from retaking the merchandise and to facilitate his escape was sufficient to sustain conviction for robbery]; see also, e.g., *People v. Robins* (2020) 44 Cal.App.5th 413, 419–420 ["What sets an *Estes* robbery apart from a standard robbery is that force or fear is used not in the acquisition of the property, but in the escape"].)  "The typical [*Estes* robbery] starts with a shoplifting and turns into a robbery when the thief is confronted by a [loss prevention officer], and the thief assaults the [loss prevention officer] in an attempt to get away."  (*Robins*, *supra*, at p. 419.)

In addition, "a person who aids and abets a crime is guilty of that crime even if someone else committed some or all of the criminal acts."  (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117 (*McCoy*).)  "[A] person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime."  (*People v. Beeman* (1984) 35 Cal.3d 547, 561 (*Beeman*).)

9

With respect to aider and abettor liability, each person's guilt is based on "the *combined acts* of all the principals," but on that particular defendant's personal mental state. (*McCoy*, *supra*, 25 Cal.4th at pp. 1120, 1122, italics added.) "When two or more persons commit a crime together, both may act in part as the actual perpetrator *and* in part as the aider and abettor of the other, who also acts in part as an actual perpetrator." (*Id.* at p. 1120.) For example, in a "shooting case, one person might lure the victim into a trap while another fires the gun; in a stabbing case, one person might restrain the victim while the other does the stabbing. In either case, both participants would be direct perpetrators *as well as* aiders and abettors of the other." (*Ibid.*, italics added.) Thus, "the dividing line between the actual perpetrator and the aider and abettor is often blurred" because "both [persons participating in a crime] may act in part as the actual perpetrator *and* in part as the aider and abettor." (*Ibid.*)

2. *Analysis*

Under the prosecution's theory of the case, Probert's initial unlawful taking of property from Kohl's constituted a mere petty theft because she did not utilize force or fear to take the property. However, when Vinck used force or fear, by brandishing the knife, to help Probert retain and abscond with the stolen items, what had been a petty theft up to that point was escalated to a robbery. Probert claims that her robbery convictions must be reversed because there was insufficient evidence that she harbored the requisite mens rea to aid and abet a robbery. Specifically, Probert argues that no evidence was presented to show that she knew of Vinck's intent to brandish the knife or that she intended to assist him in his use of force or fear in order to carry away the stolen property.

In order to establish the existence of the requisite mens rea as an aider and abettor, the prosecution had to show that Probert acted with knowledge of Vinck's criminal purpose and that she intended to encourage or facilitate Vinck's commission of the robbery. (See *Beeman, supra,* 35 Cal.3d at p. 560 [an "aider and abettor [must] act with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense"].) There is often no direct evidence of a criminal defendant's knowledge or intent; it is therefore, not unusual for these elements to be proved with circumstantial evidence. (See *People v. Hill* (1998) 17 Cal.4th 800, 851–852, overruled on another ground in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.)

Although an individual's mere presence at a crime scene or that person's failure to prevent a crime is not sufficient to prove guilt, such factors may be considered, together with other evidence, in the determination as to a defendant's guilt or innocence (*People v. Durham* (1969) 70 Cal.2d 171, 181). Other relevant factors that a jury may consider include a defendant's failure to affirmatively stop the commission of the crime and the defendant's companionship and conduct before and after the crime. (*In re Juan G.* (2003) 112 Cal.App.4th 1, 5 (*Juan G.*); *People v. Pitts* (1990) 223 Cal.App.3d 606, 893.)

There is substantial circumstantial evidence to support the jury's finding that Probert intended to aid and abet Vinck's escalation of her petty theft into an *Estes* robbery. Specifically, the jury could reasonably infer from Probert's conduct before, during, and after the robbery that she knew of and shared Vinck's criminal intent to turn a shoplifting into a robbery. The evidence demonstrated that Probert and Vinck arrived together at the Kohl's store. Probert entered the store and spent about 30 minutes inside, during

11

which she executed a shoplifting scheme. As she was preparing to leave the store, Probert made a telephone call. After the call, Vinck left his parking space and drove his car to the front of the store where Probert would soon be exiting. When Probert's escape to Vinck's car was temporarily halted by the loss prevention officers, Vinck instantly came to her aid by jumping out of the car and brandishing a knife while threatening the loss prevention officers to stay back, which facilitated both Probert and Vinck's escape. Probert was not only present for the robbery, she directly perpetrated the first portion of the crime by taking, concealing, and walking out of the store without paying for the property. She then took advantage of the opportunity that Vinck's brandishing of the knife created to allow her to escape from the loss prevention officers, get into Vinck's car and abscond with Vinck. Less culpable conduct has been determined to support a finding that a defendant aided and abetted a robbery. (See *Juan G.*, *supra*, 112 Cal.App.4th at p. 5 [substantial evidence supported finding that minor aided and abetted a robbery where he approached victim with perpetrator, stood beside direct perpetrator when perpetrator demanded money, fled with him, and was later arrested with him]; *In re Lynette G.* (1976) 54 Cal.App.3d 1087, 1095 [substantial evidence supported finding that minor aided and abetted robbery where she was present at scene of crime, fled with perpetrators, and was still with them later].)

Even if one concluded that Probert was not aware of Vinck's intention to use a knife to ensure the pair's getaway at the time she entered the store with the intention of stealing some items, the evidence is nevertheless sufficient to find her guilty of aiding and abetting a robbery. Contrary to Probert's assertion on appeal, the evidence supports an inference that she

12

and Vinck had a "meeting of the minds" to commit a robbery at the time he pulled the knife and she continued her asportation of the stolen items.

An aider and abettor need not be aware of the crime or the other participant's criminal intent beforehand: " 'Aiding and abetting may be committed "on the spur of the moment," that is, as instantaneously as the criminal act itself. [Citation.]' " (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1148, quoting *People v. Nguyen* (1993) 21 Cal.App.4th 518, 532.) Similarly, an intent to aid in another participant's criminal acts may be formed while the crime itself is underway. (*People v. Montoya* (1994) 7 Cal.4th 1027, 1039 .) Thus, even if Probert did not know before she left the store with the stolen items that Vinck would elevate the shoplifting to an *Estes* robbery, the jury could reasonably infer that Probert became aware of Vinck's criminal intent the moment he started brandishing the knife and telling the loss prevention officers to back up. There was substantial evidence—including a photograph showing Probert heading to the car as Vinck, who was standing outside the car, brandished the knife, and Vinck's testimony—to support a finding that Probert saw Vinck as he brandished the knife, used his body aggressively, and yelled at the loss prevention officers. Probert continued to flee to the car with the stolen items while Vinck was actively brandishing the knife and yelling at the loss prevention officers, knowing that the loss prevention officers had a legitimate reason to stop her. Once Vinck exited the car and brandished the knife, thereby turning what could have been a mere petty theft into a more serious crime, Probert made no attempt to deescalate the situation or to cease participating, such as by telling Vinck to put the knife away or by abandoning the stolen items. Instead, Probert utilized the cover that Vinck's criminal conduct provided to her in order to carry away the stolen property to a place of safety.

13

In addition, other evidence supported the jury's rejection of Vinck's testimony at trial in which he attempted to provide a defense to the robbery—i.e., his testimony that he was simply attempting to defend Probert from what he believed to be a mugging when he brandished the knife. First, Vinck had previously been convicted for crimes of moral turpitude, had intentionally lied to the detective in this case, and admitted that he had lied to the detective because he wanted to try to keep Probert from going to jail, all of which placed his credibility in question. Further, Vinck's claim that he did not know that Probert had stolen any items in her possession and that he believed that she was being mugged was not credible, given the testimony that the loss prevention officers repeatedly asked Probert to return the stolen items, and that they made similar comments directly to Vinck.[2]

"The focus of the substantial evidence test is on the *whole* record of evidence presented to the trier of fact, rather than on ' "isolated bits of evidence." ' [Citation.]" (*People v. Cuevas* (1995) 12 Cal.4th 252, 261.) Thus, the jury could have considered all of this evidence and ultimately rejected Vinck's self-serving testimony, instead concluding that the pair intended to steal property from Kohl's and that once that plan was interrupted by the loss prevention officers, Vinck brandished a weapon, and Probert used the cover of Vinck's brandishing, in order to escape with the stolen items.

In sum, there was substantial evidence to support the finding that Probert was the direct perpetrator of the initial petty theft and the further

---

[2]    Vinck acknowledged during his testimony that he heard the loss prevention officers discussing the fact that he had a knife. Vinck's admission that he could hear what the loss prevention officers were saying undermines his contention that he thought they were mugging Probert, given that all three loss prevention officers testified that at least one of them had repeatedly asked Probert and Vinck to return the stolen merchandise.

14

finding that she and Vinck were jointly the direct perpetrators *and* aiders and abettors of each other in committing an *Estes* robbery.

B. *Probert forfeited her contention that the jury instructions regarding the necessary intent for aiding and abetting a robbery were insufficient under the factual circumstances of this case; in any event, the instructions were sufficient*

Probert contends that the trial court erred in instructing the jury with the pattern versions of CALCRIM No. 401 (aiding and abetting) and CALCRIM No. 1600 (robbery) because, according to Probert, those pattern instructions did not adequately instruct the jury on the intent required in order to find Probert guilty of aiding and abetting a robbery. In addition, in order to avoid the consequences of forfeiture, Probert contends that trial counsel's failure to raise this issue, either by objecting to the instructions or requesting a pinpoint instruction or amplification of the pattern instructions, constituted ineffective assistance.

1. *Additional relevant background*

The prosecution's theory of criminal liability for the three counts of robbery alleged against Probert and Vinck was that Probert and Vinck worked together to commit the robbery, with both parties acting in part as the direct perpetrator and in part as the aider and abettor of the other—i.e., Vinck aided and abetted Probert's initial commission of the petty theft, and Probert aided and abetted Vinck in completing the robbery. Vinck's testimony at trial presented a mistake of fact defense.

When the court and counsel discussed the jury instructions, both Probert and Vinck objected to the pattern version of the mistake of fact instruction and requested several modifications to the language of that instruction. Counsel for Vinck asserted that because there had to be a meeting of the minds to prove the robbery on an aiding and abetting theory,

15

Vinck's purported mistaken belief that Probert had not stolen anything and that the loss prevention officers were attempting to mug Probert would negate the specific intent required for the crime of robbery. Probert's attorney added that "specifically [for] a robbery, not for a theft, they both had to know." The trial court agreed with the defense attorneys and modified the mistake of fact instruction so that it instructed the jury that Vinck was not guilty of robbery either if he did not know that Probert had unlawfully taken property or if he believed the victims were not Kohl's employees.

Neither Probert nor Vinck specifically objected to, or requested a modification of the pattern versions of CALCRIM Nos. 401, on aiding and abetting, and 1600, on robbery. Thus, the trial court instructed the jury with CALCRIM No. 401 as follows:

> "To prove that [the] defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that:
>
> "1. The perpetrator committed the crime;
>
> "2. The defendant knew that the perpetrator intended to commit the crime;
>
> "3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime;
>
> "AND
>
> "4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.
>
> "Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime.

16

"[¶] . . . [¶]

"If you conclude that defendant was present at the scene of the crime or failed to prevent the crime, you may consider that fact in determining whether the defendant was an aider and abettor.  However, the fact that a person is present at the scene of a crime or fails to prevent the crime does not, by itself, make him or her an aider and abettor."

In addition, the court instructed the jury with CALCRIM No. 1600 as follows:

"The defendants are charged in Counts One, Two, and Three with robbery in violation of Penal Code section 211.

"To prove that a defendant is guilty of this crime, the People must prove that:

"1. The defendant took property that was not his or her own;

"2. The property was in the possession of another person;

"3. The property was taken from the other person or his or her immediate presence;

"4. The property was taken against that person's will;

"5. The defendant used force or fear to take the property or to prevent the person from resisting;

"AND

"6. When the defendant used force or fear to take the property, he or she intended to deprive the owner of the property permanently.

"The defendant's intent to take the property must have been formed before or during the time he or she used force or fear.  If the defendant did not form this required intent

17

until after using the force or fear, then he or she did not commit robbery.

"[¶] . . . [¶]

"Fear, as used here, means fear of injury to the person himself or herself."  (Italics omitted.)

2.  *Analysis*

As an initial matter, we agree with the People that Probert has forfeited this argument.  Probert does not contend that the instructions that were given were incorrect statements of the law; therefore, an objection to the applicability of the instructions to the particular facts of this case, or a request for a clarifying instruction, was required in order to preserve the issue for appeal.

Probert's assertion is that the pattern instructions for aiding and abetting intended crimes (CALCRIM No. 401) and robbery (CALCRIM No. 1600) were vague and misleading because each time the word "defendant" or "perpetrator" was used, it was unclear whether it referred to Probert, Vinck, or both.  She further contends that it was not clear from CALCRIM No. 401 whether the word "crime" referred to petty theft, robbery, or both.  For example, she argues that neither CALCRIM No. 401 nor CALCRIM No. 1600, "nor any other instruction given at trial[,] informed the jury that the identities of the perpetrator and aider and abettor varied depending on whether the jury was considering the petty theft or the robbery."  Probert thus contends that the instructions failed to clarify that Vinck became the perpetrator of the robbery when he brandished the knife, thus requiring the jury to find that Probert intended to aid and abet the robbery in order to find her guilty of that offense.

A trial court has a duty to instruct on the general principles of law relevant to the issues raised by the evidence in a criminal case. (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) However, " '[g]enerally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.' [Citation.]" (*People v. Guiuan* (1998) 18 Cal.4th 558, 570; accord, *People v. Dennis* (1998) 17 Cal.4th 468, 514; *People v. Estrada* (1995) 11 Cal.4th 568, 574.) During the jury instruction conference, the trial court expressly asked the attorneys to state any objections they had and to indicate whether "there's any modifications that need to be made" regarding "wording or anything of that nature." Neither defense attorney objected to, or requested a modification of, the standard instructions on aiding and abetting intended crimes (CALCRIM No. 401) and robbery (CALCRIM No. 1600).

If CALCRIM Nos. 401 and 1600, as given by the trial court, were not correct statements of the law, then it would not have been incumbent on Probert's attorney to ask for a clarifying or pinpoint instruction. But Probert does not argue that the instructions that the court provided are incorrect statements of the law; rather, she contends that, given the unusual factual circumstances and the fact that Probert and Vinck were being tried together, the pattern instructions, without additional clarification, created possible confusion for the jury.[3] Because the instructions as given were correct statements of both the law of aiding and abetting liability and robbery, it was incumbent on Probert's attorney to request any clarification of the

---

[3] Further, as we explain in greater detail below, CALCRIM Nos. 401 and 1600, as given, correctly stated the law and were sufficient to explain the requisite intent the jury had to find with respect to Probert.

instructions for the jury; the failure to do so forfeited Probert's contention on appeal. (See, e.g., *People v. Covarrubias* (2016) 1 Cal.5th 838, 901 ["Because defendant did not object at trial that the instructions were incomplete as given, the issue is forfeited"]; *People v. Nilsson* (2015) 242 Cal.App.4th 1, 24–25 [defendant's failure to request modification of CALCRIM No. 400 on the basis that the generally accurate instruction was misleading on the facts of his case forfeits instructional error claim on appeal].)

Probert attempts to avoid forfeiture of this argument by contending that her trial counsel's failure to request clarifying or amplifying instructions regarding the intersection of aiding and abetting and robbery in this case amounted to ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance was prejudicial. (*Strickland v. Washington* (1984) 466 U.S. 668, 689 (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 216–217.) With respect to prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland*, *supra*, at p. 694.)

"It is particularly difficult to prevail on an *appellate* claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) We review trial counsel's performance with deferential scrutiny, indulging a strong presumption it falls within the wide range of reasonable professional

assistance, recognizing the many choices attorneys make in handling cases and the danger of second-guessing a trial attorney's decisions. (*People v. Maury* (2003) 30 Cal.4th 342, 389; *Strickland*, *supra*, 466 U.S. at pp. 687–688, 694.)

Probert contends that she "was the perpetrator of the petty theft, and V[in]ck was the aider and abettor to the petty theft and the perpetrator of the robbery," and that she "was, arguably, the aider and the abettor to the robbery, but the jury instructions did not make clear that for [the jury] to find Ms. Probert guilty of aiding and abetting the robbery, [the jury] had to find she intended to aid and abet the robbery." Contrary to Probert's assertion, the jury was adequately instructed that in order to find Probert guilty of robbery, it had to find that she knew of Vinck's intent to commit a robbery and that she intended to aid and abet in the commission of that robbery. The standard version of CALCRIM No. 401 is a correct and complete statement of the law on aiding and abetting intended crimes. It told the jury that in order to be liable for aiding and abetting, there must be a concurrence of knowledge and intent to commit the target crime. Given that the only charges against Probert were three counts of robbery, the reference in the instruction regarding aiding and abetting necessarily had to apply to that crime, and the standard instruction on robbery, CALCRIM No. 1600, as given to the jury, provided a correct statement of the elements of robbery. In addition, both instructions included the male and female personal pronouns in pairs, which made each element applicable to either Probert or Vinck, as necessary, for each specific element of robbery. Further, the jury was also instructed with CALCRIM No. 1603, which specifically addressed the intent of an aider and abettor *to a robbery*. As provided, this instruction told the jury:

> "To be guilty of robbery as an aider and abettor, the
> defendant must have formed the intent to aid and abet the

21

commission of the robbery before or while *a* perpetrator carried away the property to a place of temporary safety.

"A perpetrator has reached a place of temporary safety with the property if he or she has successfully escaped from the scene, is no longer being pursued, and has unchallenged possession of the property." (Italics added.)

Trial counsel could have reasonably concluded that the fact that the instructions did not use Probert or Vinck's names, and instead used general terms, such as "defendant," "perpetrator," and "crime," did not create sufficient confusion or risk the possibility that Probert could be convicted of robbery in the absence of the necessary finding of specific knowledge and intent with respect to a *robbery*. Given that only Vinck brandished a knife, and that the evidence thus demonstrated that he was the only defendant who used force or fear, it was clear from the evidence and the jury instructions as whole that in order to convict Probert of robbery, the jury would have to conclude that Probert knew of Vinck's intent to use force or fear to retain unlawful possession of the property that she had stolen, and that she actually intended to aid and abet in the robbery that he initiated through the brandishing of the knife. We conclude that Probert's attorney's decision not to request a pinpoint instruction or further clarification of the aiding and abetting and robbery instructions did not fall below an objective standard of reasonableness. We therefore reject Probert's argument that her trial counsel rendered ineffective assistance with respect to the jury instructions.[4]

_____

[4] Although we conclude that Probert cannot prevail on the first prong of the *Strickland* test for demonstrating ineffective assistance of counsel, we note that Probert also could not succeed in establishing the second prong of the test—i.e., that counsel's performance, even if objectively deficient, was prejudicial. (See *Strickland*, *supra*, 466 U.S. at p. 689.) If there had been any confusion from the fact that the pattern instructions used general words,

## IV.

## DISPOSITION

The judgment is affirmed.

AARON, J.

WE CONCUR:

BENKE, Acting P. J.

GUERRERO, J.

---

such as "defendant" and "crime," and did not specify Probert or Vinck with respect to the elements, or identify robbery as the crime to which the aiding and abetting instruction was referring, the prosecutor's closing argument clarified which defendant was alleged to have committed each element of the robbery, and further made it clear that while Vinck "supplied the fear; she took the property." The prosecutor also discussed the evidence that he believed demonstrated what the jury instructions required—i.e., Probert's knowledge of Vinck's criminal purpose and her intent to aid and abet the robbery once Vinck pulled out the knife. Thus, even if trial counsel's failure to request a pinpoint or clarifying instruction regarding CALCRIM Nos. 401 and 1600 left any latent confusion as to who was the "perpetrator" and who was the "aider and abetter," depending on whether the target crime was petty theft or robbery, the prosecutor's closing argument clarified that the prosecution's theory of Probert's liability for robbery was based on her aiding and abetting Vinck in this crime, and further clarified that the instructions required the jury to find that Probert knew or became aware of Vinck's intent to use force or fear to retain the property that she had unlawfully taken from Kohl's at or before the time he brandished the knife, and that she intended to aid and abet him in this robbery.

23