Filed 4/3/23  P. v. Sims CA2/5

# TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B315624 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA046081) |
| v. | |
| RASHIED SIMS et al., | |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Lisa B. Lench, Judge. Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant Rashied Sims.

Elizabeth Richardson-Royer, under appointment by the Court of Appeal, for Defendant and Appellant Byone Woods III.

Christine Aros, under appointment by the Court of Appeal, for Defendant and Appellant John Thomas Horton.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Daniel C. Chang and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

Three defendants – Byone Woods III, Rashied Sims, and John Horton – killed victim Gary Gibson in the course of robbing him. Woods was the actual shooter; Sims and Horton were prosecuted on a felony-murder theory. Sims and Horton went to trial and were convicted of first degree murder. Woods then pleaded guilty to second degree murder. Decades later, all three defendants filed petitions for resentencing under Penal Code section 1172.6.[1] After an evidentiary hearing, the trial court denied all three petitions. Woods's petition was denied on the ground that he was the actual killer; Sims's and Horton's were denied because they were major participants in the robbery who acted with reckless indifference to life.

All three defendants appeal. Sims and Horton challenge the sufficiency of the evidence that they acted with reckless indifference, and raise multiple evidentiary issues. Woods joins his codefendants' evidentiary arguments, but his main assertion on appeal is that denying his petition on the theory that he was the actual shooter, when he had pleaded guilty to only second degree murder, constitutes a violation of double jeopardy principles. We affirm.

---

[1] The statute was originally number 1170.95; it was renumbered effective June 30, 2022. (Stats. 2022, ch. 58, § 10.) We use the current numbering. Unless otherwise indicated, all undesignated statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Proceedings Involving Guilt*

#### A. *The Underlying Crime*[2]

On September 11, 1991, victim Gibson and his girlfriend Robin Steiner spent the evening at the Mustang Motel. They left around 11:00 p.m., and went to Gibson's car in the parking lot. Gibson's car had previously been backed into a spot near their room. Gibson unlocked the passenger door for Steiner. As she entered the car, she saw defendants' vehicle, which had been pulling out of the parking lot, back up, and park in front of Gibson's car, preventing them from driving away. Gibson told Steiner to get in the car and lock it. He started around the front of his car to the driver's side, but did not get there in time.

Defendant Woods exited the back seat of defendants' vehicle and approached Gibson.[3] After a brief exchange of words, which Steiner could not hear, Woods pointed a gun at Gibson's forehead. At this point, Horton (who had been in the driver's seat) and Sims (the front passenger) also exited the defendants' car.

Sims went to where Woods was standing, with the gun still pointed at Gibson's head. Horton came over to the driver's side of Gibson's car and told Steiner to unlock the door. She refused. He then joined the other two defendants facing Gibson. While Woods

---

[2] One of the issues on appeal is whether the trial court erred in the sources on which it relied for the facts of the case. We take our discussion of the facts from the testimony elicited at the trial of defendants Sims and Horton.

[3] Steiner did not positively identify the three defendants at trial. However, as we later explain, there is no real issue as to their identity.

3

continued to keep Gibson at gunpoint, Sims and Horton took his belongings. One of them snatched two gold chains from Gibson's neck. Gibson turned out his pockets and Sims and Horton both reached for the contents.

Woods then turned his attention to Steiner, who was still locked in Gibson's car. Woods came around to Steiner's door and told her to open it. She screamed and told him "No." He jiggled the handle. Then, Woods pointed the gun at the passenger-side window, toward Steiner's head. She screamed again.

Gibson, in an obvious effort to protect Steiner, rushed Woods and pushed him to the side of Gibson's car. The two went down, struggling. Sims then came over and intervened, separating the men. Steiner, the only eyewitness to the crime who testified at trial, did not see exactly what Sims did to separate them. On the night of the murder, Steiner made a statement to police, in which she said that Sims had pushed defendant Woods away from Gibson. She testified the same way at the preliminary hearing. At trial, however, she testified that this was a mistake, and that she thought Sims had pushed Gibson off of defendant Woods. Ultimately, on redirect, she testified, "I didn't really see who he pulled up."

In any event, once Sims had separated Woods and Gibson, Woods walked back to the front of Gibson's car. Woods appeared angry and was pacing back and forth between the two cars.

Gibson charged Woods again. Woods held the gun in the air so Gibson could not get it. Woods then pushed Gibson off of him, and shot Gibson. Gibson grabbed his chest and turned to run. Woods shot him a second time. Woods then turned to face Steiner. She ducked under the dashboard of Gibson's car.

4

The three defendants ran back into their car and drove off, tires squealing. Steiner got out of Gibson's car and found Gibson slumped over at the motel office window, holding his chest and asking the motel employee to call the police. Gibson fell, and died minutes later.

B.    *Defendants' Immediate Interaction with Police*

As it happened, two LAPD officers were patrolling the area near the motel in an unmarked vehicle. They heard the gunshot and saw Gibson running. They also saw defendants' car accelerating "pretty rapidly" away, and driving through a couple stop signs. They performed a traffic stop on the vehicle. The three defendants gave police their names, but had no identification.[4]

Although Horton had no identification, police felt a wallet in his pocket when they patted him down. Upon opening the wallet, police discovered a number of items in the name of Gary Gibson. Horton offered an explanation: he had borrowed the car from his relative, Linda Binion; he had put on a jacket he found in the backseat of the car; when the wallet kept falling out of the jacket pocket, he put it in his own pocket.

Police then asked defendants if they would mind driving to the nearest pay phone so the police could verify their story; they agreed. Horton dialed Binion and handed the phone to the officer. Binion agreed that the wallet could have belonged to one of her boyfriends. When asked if she had a boyfriend named Gary, she said that she did. When asked Gary's last name, she said she did not know. Satisfied, police returned the wallet to Horton and released defendants.

---

[4]    The officers identified defendants Sims and Horton at trial, and one officer identified Woods at the preliminary hearing.

The officers returned to the motel and found other officers investigating the crime scene. When they learned the victim's name was Gary Gibson, they went in search of defendants' car, but could not find it. However, the police still had Linda Binion's name and telephone number, from which they began their attempts to locate defendants.

C.     *Horton's Inculpatory Statement Admitted at Trial*

Horton was arrested in December 1991. He was interviewed by peace officer Maria Betancourt.[5] Horton's statement was admitted at trial only as to him. He admitted that he had borrowed the car from Binion, and was driving it in the motel parking lot when he saw a couple exiting and noticed the man was wearing gold chains. He said he approached the man, pushed him, went into his pockets, got back into the car and sped away. He admitted he was then stopped by police officers who let him go. He indicated that he did not pull the trigger and had not intended to kill anyone. According to Betancourt, "He said it should have never happened if he wasn't trying to be a hero or he wasn't trying to fight us, nothing would have happened."

D.     *Conviction, Woods's Plea, and Appeal*

Following a March 1992 preliminary hearing, all defendants were charged by information with the murder (§ 187) and robbery (§ 211) of Gibson, and assault with a firearm (§ 245, subd. (a)(2)) on Steiner.[6] It was alleged, with respect to all three

---

[5]     Betancourt was Horton's parole officer, but this fact was sanitized at trial.

[6]     A felony-murder special circumstance was alleged, but later dismissed. Various prior conviction enhancements were also alleged.

6

defendants, that a principal was armed with a firearm (§ 12022, subd. (a)(1)); and, as to Woods only, that he personally used a firearm (§ 12022.5).

The matter proceeded to trial against Sims and Horton only. Woods had been diagnosed with undifferentiated schizophrenia and was not then competent to stand trial.

At trial, Steiner was the only witness to testify to the facts of the robbery and murder.

Both Horton and Sims were convicted as charged. Including a prior serious felony enhancement (§ 667, subd. (a)), they were each sentenced to 35 years to life in prison.[7] Sims and Horton appealed.

In February 1994, following Sims and Horton's trial (but before their appeal was resolved), Woods reached a negotiated plea agreement. He pleaded guilty to second degree murder and admitted the principal-armed allegation, in return for a sentence of 16 years to life in prison. Counsel stipulated to a factual basis for the plea, which the court found to exist, although neither court nor counsel indicated where the facts establishing the factual basis were found.

On July 17, 1995, a different division of this court affirmed the convictions of Horton and Sims. (*People v. Horton* (July 17, 1995, B081132) [nonpub. opn.].)

---

[7] The sentence consisted of the high term of 4 years on the assault, plus 5 years for the prior, plus 1 year for the principal-armed enhancement, consecutive to 25 years to life for the murder.

7

## 2. *Proceedings On the Section 1172.6 Petitions*

### A. *Sims and Horton's First Petitions and Appeal*

"Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015; Senate Bill 1437) eliminated natural and probable consequences liability for murder as it applies to aiding and abetting, and limited the scope of the felony-murder rule. (Pen. Code, §§ 188, subd. (a)(3), 189, subd. (e), as amended by . . . Senate Bill 1437.)" (*People v. Lewis* (2021) 11 Cal.5th 952, 957.) Specifically, under the new law, an aider and abettor cannot be convicted of felony murder unless the defendant acted with the intent to kill or was a major participant who acted with reckless indifference to human life. Senate Bill 1437 also added section 1172.6 to the Penal Code, which creates a procedure for convicted murderers who could not be found guilty under the law as amended to retroactively seek relief.

In 2019, defendants Sims and Horton, but not Woods, filed petitions for resentencing under section 1172.6. The district attorney opposed the petitions, arguing that Sims and Horton were ineligible for relief on the basis that they had been major participants in the underlying crime who had acted with reckless indifference to life.

The trial court summarily denied both petitions. On appeal, the Attorney General conceded that Horton and Sims had established a prima facie case for relief, and were entitled to the issuance of an order to show cause and a hearing. We agreed and reversed. (*People v. Horton* (Feb. 11, 2021, B303337) [nonpub. opn.]; *People v. Sims* (Feb. 11, 2021, B302109) [nonpub. opn.].) We take judicial notice of the record in Sims's appeal.

B.  *Woods's 1172.6 Petition and the Hearing for All Three Defendants*

On remand, the trial court set the matter for hearing on the Sims and Horton petitions, and the parties filed additional briefing.  By this time, Woods had also filed a petition for relief under section 1172.6.  The trial court issued an order to show cause and set a joint hearing on whether any of the three defendants were entitled to relief.

The parties disagreed about what evidence would be admissible at the entitlement hearing.  Sims argued that the trial court should consider the facts as set forth in the 1995 opinion affirming his and Horton's convictions.  Sims also sought to rely on that portion of Steiner's testimony from the preliminary hearing in which she testified that Sims had pulled defendant Woods off Gibson, excerpts from her trial testimony on that point, and her statement to police on the same issue.  Horton, for his part, questioned whether due process permitted reopening the evidence at all.  As for Woods, he would eventually argue (at the entitlement hearing) that the trial court could not consider *as against him* the evidence at the trial of his codefendants, nor the appellate court opinion affirming their convictions, as he was not a party to those proceedings.  He believed only the evidence at his preliminary hearing was admissible as to him.  The prosecutor did not object to the use of the 1995 opinion or the preliminary hearing transcript.

The prosecutor sought to rely on statements the defendants had made at their parole hearings.  He also sought admission of Woods's recorded interview with police from the night of his arrest, a month after the murder.  The prosecutor wanted to admit Woods's interview not only for its substance, but also

9

because it reflected Woods's troubled mental state.[8]  This was to support the prosecution's argument that "providing a loaded firearm to a mentally impaired individual so that he can commit an armed robbery clearly shows a conscious disregard for human life."

The prosecutor then filed an additional brief in which, although he did not formally seek to admit evidence from the parole hearings, he "note[d]" certain facts from them.[9] Ultimately, the trial court would only consider one of those facts: At a parole hearing in 2020, Sims said that he was the one who had given Woods the gun.

C.     *Trial Court's Ruling Denying the Petitions*

After further briefing and a hearing – at which no live testimony was offered – the trial court denied the petitions.[10]

---

[8]     The appellate record contains a video of Woods's October 10, 1991 interview, in which he is obviously impaired, although the cause of the impairment is unclear.  In his interview, Woods attempts to minimize his involvement, at first claiming Horton started the robbery and Sims joined it, shooting Gibson, before Woods even got out of the car.  When told that a witness saw him with the gun, he said that Sims gave him the gun, but he held it for only a few seconds.  Woods was adamant that Horton tackled Gibson and Sims shot him.

[9]     At the time, District Attorney policy was that parole board hearing transcripts would not be offered into evidence at section 1172.6 hearings.

[10]     At the hearing, Horton's counsel posited yet another view of the facts.  Specifically, he represented there were two scuffles.  In the first one, Horton (not Sims) pulled Woods off Gibson.  In the second, Gibson succeeded in knocking the gun out of Woods's

First, the court stated that it took the facts from the 1995 Court of Appeal opinion affirming Sims's and Horton's convictions, although – in light of Woods's argument that he was not a party to that appeal – the court also indicated reliance on the preliminary hearing testimony, and noted relevant differences between the two.[11] The court also considered the statement from Sims's parole hearing as an admissible declaration against interest.

Turning to the merits, the court found Woods was the actual shooter, so no relief was available to him under section 1172.6.

The court next turned to Horton. First, the court found Horton was a major participant in the robbery – as the driver, he blocked Gibson's car from escaping, and he was stopped by police with Gibson's wallet in his pocket. Next, the court considered

---

hands. Sims picked up the gun, pushed Woods off Gibson, and shot Gibson. Counsel explained the source of this story was, "an inconsistent record and from speaking with my client." The hearing was Horton's opportunity to testify to this view of the facts, if he so desired. Counsel's argument is not evidence.

[11] Specifically, the court noted the only "major inconsistency" between the trial and the preliminary hearing was Woods's post-arrest statement in which he stated that Sims was the shooter. The court rejected that evidence in favor of Steiner's testimony that Woods was the shooter. It does not appear there was any inconsistency. Woods's post-arrest statement was not part of the preliminary hearing or trial testimony (although it was part of the prosecution's briefing on the order to show cause). The only evidence on the identity of the shooter – at both the preliminary hearing and the trial – was Steiner's testimony that it was Woods.

11

whether Horton had acted with reckless indifference to human life, and concluded that he did. The court particularly relied on the fact that Horton was aware that Gibson was resisting the crime, but Horton did nothing to de-escalate the violence. Nor did he render aid to Gibson after the shooting, but fled. Indeed, when stopped by police, he could have alerted them to the presence of the bleeding victim back at the motel, but instead wasted their time by lying about the source of Gibson's wallet.

The result was the same as to Sims. He was a major participant in the robbery because he helped surround the victim when Woods held him at gunpoint and participated in removing the victim's property. As to reckless indifference, the court first noted that Sims admitted in his second parole hearing that he gave the gun to Woods. But even without that statement, the court found Sims acted with reckless indifference. Specifically, Sims did nothing to prevent the shooting during the robbery. The court was not impressed with Sims's argument that he had attempted to stop the violence by separating Woods and Gibson when they struggled on the ground. "The court is unconvinced that separating the two wrestling men is evidence of an attempt to prevent violence. In fact, it gave defendant Woods an easier time at shooting Mr. Gibson. Had defendant Sims done something to attempt to remove the gun from defendant Woods'[s] possession, the court would be more convinced of the motive behind Sims'[s] actions. As it stands, the fact does not carry the weight suggested by counsel."

All three defendants filed timely notices of appeal.

### DISCUSSION

On appeal, Sims and Horton both argue the trial court erred in: (1) considering the facts from the prior appellate

opinion; (2) considering the preliminary hearing transcript; (3) considering the parole hearing transcripts; and (4) finding that substantial evidence supported the court's conclusion they acted with reckless indifference to human life. Woods similarly argues the court erred in relying on the facts from the prior appellate opinion and his codefendants' parole hearings, and also argues (5) the court's ruling violated principles of double jeopardy, in that his plea agreement resulted in an implied acquittal of first degree murder, and the court's finding that he was the shooter was the equivalent of a finding that he committed first degree murder.

1. ***Any Error in Considering the Facts from the Prior Appellate Opinion was Harmless***

As the argument of defendant Woods is somewhat different from that of Sims and Horton, we consider him separately in our discussion.

A. *Sims and Horton*

Prior to the entitlement hearing, Sims repeatedly argued that the trial court *should* consider the facts from the prior appellate opinion. On appeal, he argues the court's acceptance of this argument was error. Sims's change in position was caused by a change in the law. At the time of the hearing, subdivision (d)(3) of section 1172.6 did not specifically identify the evidence that could be used at an entitlement hearing, and it was thought that the record of conviction, including any prior appellate opinion, could be used. (See *People v. Clements* (2022) 75 Cal.App.5th 276, 283 (*Clements*).) Senate Bill No. 775 (2021-2022 Reg. Sess.), effective January 1, 2022, amended the statute to set forth limitations on the evidence, providing, "The admission of evidence in the hearing shall be governed by the

13

Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. *The court may also consider the procedural history of the case recited in any prior appellate opinion.*" (Stats. 2021, ch. 551 (S.B. 775), italics added.) This "specificity indicates the Legislature has decided trial judges should not rely on the factual summaries contained in prior appellate decisions when a section [1172.6] petition reaches the stage of a full-fledged evidentiary hearing." (*Clements, supra,* 75 Cal.App.5th at p. 292.)

We agree that, under the law as the Legislature has amended it, it was error for the trial court to rely on the facts as set forth in the prior appellate opinion. The court was required to rely on the trial (and any other admissible) testimony instead. But this is not the end of the analysis. A judgment or decision shall not be reversed based on the erroneous admission of evidence unless the error resulted in a miscarriage of justice. (Evid. Code, § 353, subd. (b); *People v. Owens* (2022) 78 Cal.App.5th 1015, 1027 (*Owens*).) It is also true that, although defendants are permitted to join in the arguments in each other's briefs, they each still individually have the burden to establish they were prejudiced by any trial court error. (*People v. Nilsson* (2015) 242 Cal.App.4th 1, 12, fn. 2.)

Here, Sims and Horton have failed to meet this burden. Indeed, they have not even tried. It is apparent that, at the section 1172.6 hearing, the defendants had the opportunity to offer whatever evidence they felt was persuasive, and did so. Sims, for example, relied on the same Court of Appeal opinion, favorable excerpts from the preliminary hearing transcript,

14

favorable excerpts from the trial testimony, and Steiner's recorded interview with police. He now seeks to capitalize on the change in the law by arguing that the trial court should not have relied on the Court of Appeal opinion, but fails to demonstrate any prejudice arising from the court having done so, given the indisputable fact that he took advantage of the opportunity to supplement the Court of Appeal opinion with facts from within (and without) the record that he felt were advantageous to him.[12]

Sims and Horton have pointed to no fact on which the trial court relied from the Court of Appeal opinion which was not also found in the testimony at trial. Having reviewed the trial court's factual summary, the Court of Appeal opinion, and the trial transcript ourselves, we have found none. The reason for this is apparent: Steiner was the sole witness to the facts of the crime; the officers were the only witnesses to the police stop. The prior appellate opinion, like our own review of the facts, was limited to the testimony of these witnesses. While, in light of Senate Bill 775, the trial court's consideration of the factual summary from the appellate opinion was erroneous, it was not prejudicial.

B.     *Woods*

Woods argues that it is not entirely clear whether the trial court relied on the Court of Appeal's factual summary as to him, or whether it accepted his argument that it could rely only on the preliminary hearing, as that was the only proceeding to which he

---

[12]     We are not here relying on the doctrine of invited error to reject defendants' argument, although it is true that both Sims and Horton invited the trial court to rely on the facts from the Court of Appeal opinion. But our review of the record leaves us with the conclusion that Sims and Horton relied on the Court of Appeal factual summary because it was an accurate summary of the testimony at trial.

was a party. (See *People v. Flores* (2022) 76 Cal.App.5th 974, 978, 988 [appellate opinion in codefendant's case is not part of the record of conviction of defendant who pleaded no contest and did not proceed to trial].) Our view of the trial court's ruling is that it considered the distinction irrelevant, and we agree.

The trial court denied Woods's petition on the basis that he was the shooter. It is true that Steiner's identification of Woods at the preliminary hearing was less than positive, stating only that he looked like the shooter. But one of the officers who stopped the defendants' car fleeing from the scene positively identified defendants as the three men in it, limiting the shooter to one of those three. When the universe of potential shooters is restricted to the three defendants, Steiner's testimony that Woods looked like the shooter has much more significance. Moreover, when the police stopped the car, Woods was sitting in the back seat – the seat from which, according to Steiner, the shooter came. Steiner's physical description of the men eliminated the possibility that Sims had been the shooter but switched seats with Woods after the shooting.[13]

In short, the evidence at the preliminary hearing was that Woods was the shooter, just like the evidence at the trial, and the factual description in the prior Court of Appeal opinion. Woods has failed to demonstrate prejudice.

---

[13] Steiner described the front passenger as having a shoulder-length jheri curl hairstyle, while the back seat shooter had medium hair. When the police stopped the car, Sims, the front passenger, had the jheri curl.

## 2. *Sims's and Horton's Contention Regarding the Preliminary Hearing Transcript Also Fails*

Sims and Horton next argue the trial court erred in considering the preliminary hearing transcript against them. But there is no absolute statutory prohibition against considering the preliminary hearing transcript at a section 1172.6 entitlement hearing. Indeed, as amended by Senate Bill 775, the statute provides, "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted *at any prior hearing* or trial that is admissible under current law, . . . . However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of [s]ection 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule." (§ 1172.6, subd. (d)(3); italics added.) The first quoted sentence explicitly permits the admission of evidence admitted at a prior hearing – on its face that appears to include a preliminary hearing. The second quoted sentence excludes only preliminary hearing evidence admitted under section 872, subdivision (b) – a section permitting law enforcement officers to testify to hearsay at a preliminary hearing – which did not occur in defendants' preliminary hearing. Taken together, the plain language of these sentences appears to permit the preliminary hearing testimony relied upon by the trial court in this case.

We need not reach the issue, however, as, even if there were error, Sims and Horton again cannot demonstrate prejudice. Steiner's testimony at the preliminary hearing and trial was largely consistent. To the extent it differed on the point of which person Sims pulled off the other during the struggle, Sims sought

17

to place both versions before the court at the section 1172.6 hearing.  Indeed, Sims's briefing on the issue *favored* Steiner's preliminary hearing testimony over her trial testimony.

**3.       *There Was No Error in Considering a Single Statement from One of Sims's Parole Hearings***

All three defendants argue, at length, that the trial court erred in considering statements from Sims's and Horton's parole hearings.  While the court, as a legal matter, found the statements admissible, the court's statement of its ruling actually relied only on a single statement from Sims's second parole hearing:  that he gave the gun to Woods.

Preliminarily, the trial court only used the statement against Sims.  It was therefore an admission of a party opponent, and not inadmissible hearsay. (Evid. Code, § 1220.)  Sims's main argument is that a judicially-created rule of use immunity from *People v. Coleman* (1975) 13 Cal.3d 867 (*Coleman*) should be extended to the admission of parole hearing statements subsequently offered at a section 1172.6 entitlement hearing.  In *Coleman*, our Supreme Court was faced with the situation of a defendant held to answer on criminal charges being subjected to a *probation* revocation hearing prior to his criminal trial.  The defendant argued he was forced to forego his opportunity to defend himself at the revocation hearing in order to avoid incriminating himself at his pending trial. (*Coleman,* at p. 871.)  The high court concluded that the prosecution should not be "encouraged to schedule revocation hearings in advance of trial as a matter of course by being allowed to use at trial the testimony of the defendant at a prior probation revocation hearing." (*Id*. at p. 889.)  In order to disincentivize the prosecution from this conduct, the court declared a judicial

18

immunity rule, "that henceforth upon timely objection the testimony of a probationer at a probation revocation hearing held prior to the disposition of criminal charges arising out of the alleged violation of the conditions of his probation, and any evidence derived from such testimony, is inadmissible against the probationer during subsequent proceedings on the related criminal charges" except for impeachment or rebuttal. (*Ibid.*)

Sims is not the first person to argue the *Coleman* exclusionary rule should be extended to statements from parole hearings at subsequent section 1172.6 entitlement hearings. Courts have repeatedly rejected the extension – based on the fundamental differences between probation revocation and parole hearings – and we agree.[14] (*Mitchell, supra,* 81 Cal.App.5th at p. 588; *People v. Anderson* (2022) 78 Cal.App.5th 81, 89–93; *People v. Myles* (2021) 69 Cal.App.5th 688, 704–706 (*Myles*).)

In any event, even if the trial court erred in admitting the evidence, we would review the error under *People v. Watson* (1956) 46 Cal.2d 818, 836, for whether it is reasonably probable the defendant would have received a more favorable result in the absence of the error. (*Myles, supra,* 69 Cal.App.5th at pp. 706–707.) Here, the trial court expressly stated that it would have found Sims was a major participant acting with reckless

---

[14] We also agree with the position – proffered by the district attorney and Sims's counsel at the admissibility hearing – that trial courts possess the authority to determine whether the circumstances of a defendant's statement at a parole eligibility hearing indicate it was made only to make a show of accepting responsibility and might not have been true. (*People v. Mitchell* (2022) 81 Cal.App.5th 575, 590 (*Mitchell*).) Sims does not argue that his specific admission that he provided the gun to Woods falls within this rule.

19

indifference to human life even in the absence of this evidence. Any error was therefore not prejudicial as to the sole defendant against whom the evidence was used.

**4.**   ***There Was Sufficient Evidence Sims and Horton Acted With Reckless Indifference***

We now reach the heart of this appeal. In Senate Bill 1437, the Legislature narrowed the scope of the felony-murder rule and, by section 1172.6, provided a path for resentencing for defendants previously convicted of felony murder who could not have been convicted under the new law. "Resentencing is available under the new law if the defendant neither killed nor intended to kill and was not 'a major participant in the underlying felony [who] acted with reckless indifference to human life, as described in subdivision (d) of [Penal Code] [s]ection 190.2.' [Citations.] This provision repurposes preexisting law governing felony-murder special-circumstance findings — the findings a jury makes in felony-murder cases to determine whether the defendant may be sentenced to death or life without possibility of parole (Pen. Code, § 190.2, subd. (d)) — to define eligibility for sentencing relief." (*People v. Strong* (2022) 13 Cal.5th 698, 703.) This, in turn, requires an evaluation of whether the defendant's conduct met the standards of major participation and reckless indifference discussed in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). (*Strong,* at pp. 713–714.) Here, the parties' dispute is over reckless indifference only.[15]

---

[15]   Sims concedes the evidence establishes his major participation. Horton does not expressly concede the issue, but argues insufficient evidence of only reckless indifference.

Before we detail the *Banks* and *Clark* factors and the evidence of Sims's and Horton's reckless indifference, we first address our standard of review.

A.     *Standard of Review*

Section 1172.6, subdivision (d)(3), as amended by Senate Bill 775, provides, "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended . . . ." We review the trial court's findings for substantial evidence, viewing the evidence in the light most favorable to the prosecution and presuming in favor of the judgment every fact the trial court reasonably could have deduced from the evidence.  We resolve neither credibility issues nor evidentiary conflicts.  (*Owens, supra,* 78 Cal.App.5th at p. 1022.)

By supplemental brief on appeal, Sims argues that our standard of review in this matter instead should be independent review.  " '[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' [Citation.]  When courts engage in independent review, they should be mindful that ' "[i]ndependent review is *not* the equivalent of de novo review . . . ." ' [Citation.]  An appellate court may not simply second-guess factual findings that are based on the trial court's own observations." (*People v. Vivar* (2021) 11 Cal.5th 510, 527.)  In independent review, the appellate court still accords deference to trial court determinations based on credibility of witnesses it has heard and observed.  This is distinguished from substantial evidence review, which is not merely deferential to trial court credibility

21

determinations, but bound by them, if they are adequately supported. (*Id.* at p. 527 & fn. 6.) In *Vivar*, the California Supreme Court held that independent review applied in an appeal from a trial court's decision on a statutory motion to vacate a conviction arising from a plea that was invalid due to prejudicial error affecting the defendant's ability to meaningfully understand the immigration consequences. (§ 1473.7, subd. (a)(1).) The court applied independent review for multiple reasons, only one of which was that the evidence on such a motion was likely to be documentary. (*Vivar, supra,* at pp. 524–528.)

The differences between *Vivar* and the present case notwithstanding, Sims reasons that, because the only evidence at his hearing was documentary, we are in as good a position as the trial court to evaluate it. We should, therefore, apply independent review. But *Vivar* itself expressed that it was limited to the particular statutory motion at issue and was not intended to alter the usual deferential standard of review of trial court factual determinations. (*Vivar, supra,* 11 Cal.5th at p. 528, fn. 7 ["Nothing we say here disturbs a familiar postulate: when reviewing a ruling under the substantial evidence standard, 'an appellate court should defer to the factual determinations made by the trial court,' regardless of 'whether the trial court's ruling[s are based] on oral testimony or declarations.' [Citations.]".) Cases post-*Vivar* agree that *Vivar* does not apply to section 1172.6 entitlement hearings.[16] (*Mitchell, supra,* 81 Cal.App.5th at pp. 590–591; *Clements, supra,* 75 Cal.App.5th at p. 301.)

---

[16] Alternatively, Sims argues that our substantial evidence review should grant no deference to trial court factual findings based purely on a review of documentary evidence. In his

22

B.   *The Law of Reckless Indifference*

Although defendants do not challenge the finding they were major participants, we set out the factors related to major participants as there is some overlap with reckless indifference. (*Clark, supra,* 63 Cal.4th at p. 615.)  " 'The ultimate question pertaining to being a major participant is "whether the defendant's participation in 'criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.' " ' [Citation.] 'Among the relevant factors in determining this question, [the California Supreme Court has] set forth the following:  "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant present at the scene of the killing, in a position to

---

appellate briefing, Sims – no less than three times – purports to quote from *Flores v. Nature's Best Distribution, LLC* (2016) 7 Cal.App.5th 1, as stating, on page 9, "when a court resolves a factual issue purely based on its interpretation of documents, we also apply a nondeferential standard of review."  That quote does not appear in *Flores,* on page 9 or anywhere.  *Flores* states only, "The ' " 'interpretation of a written document where extrinsic evidence is unnecessary is a question of law for independent review by the Court of Appeal. [Citations.]' " ' [Citation.]  We therefore review this issue de novo." (*Flores, supra,* 7 Cal.App.5th at p. 9.)  *Flores*'s routine statement of the law of contract interpretation provides no support for the proposition that substantial evidence review of a trial court's factual determination becomes nondeferential in a criminal case founded on documentary evidence.

facilitate or prevent the actual murder, and did his or her own actions or inactions play a particular role in the death? What did the defendant do after lethal force was used?" ' " (*People v. Jones* (2022) 86 Cal.App.5th 1076, 1087 (*Jones*).)

"As to whether the defendant acted with reckless indifference to human life, there is ' "significant[ ] overlap" ' with the major participant analysis. [Citation.] Other factors relevant in determining whether the defendant acted with reckless indifference to human life include: '(1) Knowledge of weapons, and use and number of weapons'; '(2) Physical presence at the crime and opportunities to restrain the crime and/or aid the victim'; '(3) Duration of the felony'; '(4) Defendant's knowledge of cohort's likelihood of killing'; and '(5) Defendant's efforts to minimize the risks of violence during the felony.' " (*Jones, supra,* 86 Cal.App.5th at p. 1087.)

"Reckless indifference to human life 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.' [Citation.] As to its subjective element, '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed' and consciously disregard 'the significant risk of death his or her actions create.' [Citation.] As to its objective element, '[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.' [Citation.] ' "Awareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient" to establish

24

reckless indifference to human life; "only knowingly creating a 'grave risk of death' " satisfies the statutory requirement. [Citation.] Notably, "the fact a participant [or planner of] an armed robbery could anticipate lethal force might be used" is not sufficient to establish reckless indifference to human life.' " (*Jones, supra,* 86 Cal.App.5th at pp. 1087–1088.)

"In reviewing the trial court's findings, we analyze the totality of the circumstances. [Citation.]" (*Owens, supra,* 78 Cal.App.5th at p. 1023.) No single factor is necessary, or is any one of them necessarily sufficient, to uphold a finding of reckless indifference. (*Id.* at p. 1024.)

C. *Horton*

As we have explained, although Horton does not challenge that he was a major participant, there is significant overlap between the analysis for "major participant" and that for "reckless indifference." Horton's major participation in the crime demonstrates that he was present at the time the robbery turned into a murder. Not only that, he set the crime in motion – he was the one who drove the car in front of Gibson's car to prevent their escape. Thereafter, he exited the car once Woods had Gibson at gunpoint; he participated in taking Gibson's belongings while Woods had a gun pointed at Gibson; he drove from the scene after Woods shot Gibson; and he lied to police after he was stopped when, for all he knew, Gibson was bleeding to death and could still be helped.

Of the other facts supporting reckless indifference, significantly, Horton's presence meant that he had the opportunity to intervene when matters turned violent. After his arrest, Horton admitted his involvement to Officer Betancourt, and told her that he had not intended to kill anyone. He said

25

Gibson would not have been killed if he "wasn't trying to be a hero or he wasn't trying to fight us." But the fact is, Gibson did try fight the robbers when they turned their attentions toward Steiner. Once Gibson ran at Woods and struggled with him on the ground, defendants were aware that they were facing a victim who would not simply stand by while they attempted to reach his girlfriend – Gibson would fight back to save her. After Sims separated Woods and Gibson, Woods, gun in hand, angrily paced back and forth between the two cars. At this point, Horton's failure to take action was sufficient to establish reckless indifference. The defendants had successfully robbed Gibson – they had his wallet and chains. Horton knew that Steiner was locked in Gibson's car, was not going to intervene, and that Gibson would defend her. Horton could have encouraged his fellow perpetrators to escape with their takings. He could have gone back into the car and prepared to leave; he could have even moved the car himself, giving the victims an opportunity to drive safely away. But by doing nothing when he knew of an impasse between his angry, frustrated armed co-perpetrator and a victim willing to fight back, he acted with reckless indifference to Gibson's life.

D. *Sims*

The analysis as to Sims is similar. He has conceded he was a major participant, and he was; he gave the gun to Woods and helped take Gibson's property while Woods held him at gunpoint.

Sims makes much of the fact that he separated Gibson and Woods when Gibson charged Woods – particularly relying on evidence that he had pulled Woods off Gibson, rather than the other way around. The trial court did not expressly resolve the issue and may have found that Steiner's testimony was

26

inconsistent because she could not actually see that portion of the struggle. But this much is true: whether Sims pulled Gibson off Woods or Woods off Gibson, Sims separated the fighting men and left the gun in the hands of Woods, who was then pacing angrily. Remember, it was Sims who had given his gun to Woods. There is no evidence that he demanded, or even asked, Woods to return his gun to him. There is no evidence that he even told Woods to calm down, or attempted to end the crime at that point. The crime had evolved beyond a standard armed robbery due to the victim's willingness to fight back, but Sims did nothing to de-escalate the increased risk of a shooting.[17] (Compare *In re Miller* (2017) 14 Cal.App.5th 960, 966–967 [finding insufficient evidence of reckless indifference when defendant was not present at the scene and there was no evidence he knew lethal force was appreciably more likely than that inherent in a "garden-variety" armed robbery].)

5.    ***Woods's Double Jeopardy Claim is Meritless***

Woods did not go to trial with Horton and Sims. At the time of the trial, Woods had been found not competent to stand trial. When his competence was restored, he entered a plea to second degree murder. Woods argues that acceptance of this plea

---

[17]    Sims argues "There is no evidence [he] knew Gibson was inherently more likely to put up such heightened resistance as would create a grave risk of death. Nor was this the objective state of things such that [Sims] should be charged with such knowledge." But this very much was the objective state of things after Gibson put up that very resistance. Sims's argument might be more persuasive if Woods had shot Gibson the moment Gibson first rushed him. But Sims knew Gibson would resist during the time he separated the two men, and, crucially, after the two were separated and Woods was pacing between the two cars.

constituted an implied acquittal of first degree murder. Therefore, he argues, his section 1172.6 petition could not be denied on the basis that he was the actual killer, because that would mean he was guilty of first degree murder, a crime of which he had been impliedly acquitted. The trial court ruling constituted double jeopardy.

There are any number of reasons why this claim fails, the simplest being that there is no constitutional right against double jeopardy in section 1172.6 proceedings. (*Mitchell, supra,* 81 Cal.App.5th at p. 589; *Myles, supra,* 69 Cal.App.5th at p. 704.)

We also observe that, from the preliminary hearing onward, the prosecution always proceeded on the basis that Woods was the actual killer. Whether the prosecution agreed to a plea of second degree murder as an act of leniency because Woods was willing to admit responsibility, to avoid putting Steiner through a second trial, due to Woods's diminished mental capacity, or for other reasons, Woods was convicted of second-degree murder as the actual killer. Following denial of his section 1172.6 petition, he remains convicted of second degree murder as the actual killer. There is no change in the conviction and no double jeopardy.

28

### *DISPOSITION*

The orders denying defendants' section 1172.6 petitions are affirmed.


RUBIN, P. J.

WE CONCUR:


MOOR, J.


KIM, J.